# United States Court of Appeals
## For the First Circuit

No. 17-1593

SEXUAL MINORITIES UGANDA,

Plaintiff, Appellee,

v.

SCOTT LIVELY, individually and as President of
Abiding Truth Ministries,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Barron, Circuit Judges.

Mathew D. Staver, Horatio G. Mihet, Roger K. Gannam, Daniel
J. Schmid, Mary E. McAlister, and Liberty Counsel on brief for
appellant.
Pamela C. Spees, Jeena D. Shah, Baher Azmy, Judith Brown
Chomsky, and Center for Constitutional Rights on brief for
appellee.

August 10, 2018

**SELYA**, **Circuit Judge**.  This appeal reminds us that federal courts of appeals have no roving writ to review either a district court's word choices or its run-of-the-mill interlocutory orders.  Given these limitations, we are left with two questions, the first of which can be resolved through principles of judicial estoppel and the second of which can be resolved through a recognition of the district court's broad discretion with respect to supplemental jurisdiction.  When all is said and done, we dismiss some portions of this appeal for want of appellate jurisdiction and otherwise affirm the district court's dismissal of the underlying action.

## I. BACKGROUND

We start by rehearsing the travel of the case.  Those who hunger for greater factual detail should consult the district court's exegetic rescripts.  See Sexual Minorities Uganda v. Lively (Lively II), 254 F. Supp. 3d 262 (D. Mass. 2017); Sexual Minorities Uganda v. Lively (Lively I), 960 F. Supp. 2d 304 (D. Mass. 2013).

Plaintiff-appellee Sexual Minorities Uganda (SMUG) is an unincorporated association whose members have banded together to advocate for fair and equal treatment of lesbian, gay, bisexual, transgender, and intersex (LGBTI) people living in that nation.  In 2012, SMUG repaired to the federal district court in Massachusetts and sued defendant-appellant Scott Lively, asserting a claim under the Alien Tort Statute (ATS), 28 U.S.C. § 1350, and

common-law claims for negligence and civil conspiracy. The complaint premised jurisdiction both on the ATS and on diversity of citizenship. As an anchor to windward, SMUG also invoked the district court's supplemental jurisdiction over the state-law claims.

The district court denied Lively's first motion to dismiss, see Lively I, 960 F. Supp. 2d at 335, and the parties embarked on extensive pretrial discovery. In due season, Lively moved for summary judgment on all claims. See Fed. R. Civ. P. 56(a). He argued, inter alia, that the district court lacked subject-matter jurisdiction over the ATS claim due to the absence of evidence of unlawful domestic conduct, see Kiobel v. Royal Dutch Petroleum Co., 569 U.S. 108, 124-25 (2013); that the court lacked diversity jurisdiction; and that the court should decline to exercise supplemental jurisdiction over the pendent state-law claims. SMUG opposed the motion, but the district court granted it, dismissing the ATS claim for want of subject-matter jurisdiction and declining to exercise supplemental jurisdiction over the state-law claims (which it dismissed without prejudice). See Lively II, 254 F. Supp. 3d at 270-71. Although Lively was the prevailing party, he nonetheless appealed.

- 3 -

## II. ANALYSIS

Lively chiefly faults the district court for including a series of unflattering statements in its dispositive opinion.[1] Second, he says that the district court should have exercised diversity jurisdiction over SMUG's state-law claims. Diversity jurisdiction aside, he challenges both the district court's refusal to exercise supplemental jurisdiction over SMUG's state-law claims and its dismissal of those claims without prejudice (rather than with prejudice). Finally, he contends that the district court should have granted his first motion to dismiss in 2013. We take up these plaints one by one.

### A. Purging the District Court's Opinion.

In his most loudly bruited claim of error, Lively beseeches us to purge certain unflattering statements from the district court's dispositive opinion. See, e.g., supra n.1. None of these statements, though, have any bearing on the analytical foundations of the dispositive order or impact the result. The statements are, therefore, dicta and, as such, they lack any binding or preclusive effect. See Kastigar v. United States, 406 U.S. 441, 454-55 (1972); United States v. Barnes, 251 F.3d 251,

---

[1] Most prominently, the court suggested that Lively "aided and abetted a vicious and frightening campaign of repression against LGBTI persons in Uganda" and that such actions amounted to "violations of international law." Lively II, 254 F. Supp. 3d at 264.

- 4 -

258 (1st Cir. 2001). Because they are not "in any sense necessary to the district court's judgment," we lack jurisdiction to entertain Lively's request that we excise them. United States v. Ottati & Goss, Inc., 900 F.2d 429, 443 (1st Cir. 1990) (Breyer, J.); see California v. Rooney, 483 U.S. 307, 311 (1987) (per curiam). We explain briefly.

Lively's jurisdictional statement in this court predicated appellate jurisdiction on 28 U.S.C. § 1291. In enacting section 1291, Congress authorized the federal courts of appeals to review final orders and judgments of lower federal courts. See Cunningham v. Hamilton Cty., 527 U.S. 198, 203 (1999). We thus review "judgments, not statements in opinions." Black v. Cutter Labs., 351 U.S. 292, 297 (1956); see Williams v. United States (In re Williams), 156 F.3d 86, 90 (1st Cir. 1998). Generally speaking, only a party aggrieved by a final order or judgment may avail himself of the statutory right to appeal embodied in section 1291.[2] See Cunningham, 527 U.S. at 203; Espinal-Dominguez v. Puerto Rico,

---

[2] Like most general rules, the rule of finality is subject to exceptions and variations. For instance, the Supreme Court has recognized a "narrow class" of appealable interlocutory orders "that are conclusive, that resolve important questions completely separate from the merits, and that would render such important questions effectively unreviewable on appeal from final judgment in the underlying action" if not immediately reviewed. Dig. Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 867 (1994); see Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949). Lively does not contend that this collateral order doctrine has any relevance here.

- 5 -

352 F.3d 490, 495 (1st Cir. 2003).  As a practical matter, this means that we typically review appeals by parties who lost in the lower court and confine our inquiry to findings that were necessary to sustain the final judgment.  See Elec. Fittings Corp. v. Thomas & Betts Co., 307 U.S. 241, 242 (1939); Vaquería Tres Monjitas, Inc. v. Pagan, 748 F.3d 21, 27-28 (1st Cir. 2014).

It follows that a party — like Lively — who has obtained a favorable final judgment may not "seek review of uncongenial findings not essential to the judgment and not binding upon [him] in future litigation."  Mathias v. WorldCom Techs., Inc., 535 U.S. 682, 684 (2002) (per curiam); see Elkin v. Metro. Prop. & Cas. Ins. Co. (In re Shkolnikov), 470 F.3d 22, 24 (1st Cir. 2006).  A necessary corollary of this proposition is that "a winner cannot appeal a judgment merely because there are passages in the court's opinion that displease him."  Abbs v. Sullivan, 963 F.2d 918, 924 (7th Cir. 1992); see Navieros Inter-Americanos, S.A. v. M/V Vasilia Express, 120 F.3d 304, 316 (1st Cir. 1997).  Such a praxis stems not only from the language and clear intendment of section 1291 itself, but also from prudential considerations.  An appellate court's "resources are not well spent superintending each word a lower court utters en route to a final judgment in the [appellant's] favor."  Camreta v. Greene, 563 U.S. 692, 704 (2011).  We conclude, therefore, that we lack jurisdiction to entertain

- 6 -

Lively's request that we purge certain unflattering comments from the district court's opinion.

To be sure, the Supreme Court has on rare occasions determined that a party who won below was nonetheless injured by a final judgment and that policies "of sufficient importance" justified entertaining an appeal. Id. (quoting Deposit Guar. Nat. Bank v. Roper, 445 U.S. 326, 336 n.7 (1980)). Lively labors to fit his appeal into one such exception. In Electrical Fittings, the judgment contained a legal finding that was unfavorable to the prevailing party. See 307 U.S. at 242. The Court entertained the appeal, "not for the purpose of passing on the merits, but to direct the reformation of the decree." Id.

Trying to fit this case into the contours of Electrical Fittings is like trying to fit a square peg into a round hole. The judgment from which Lively appeals simply dismisses SMUG's action; it does not include any findings adverse to Lively. The Electrical Fittings exception has no application where, as here, the language complained of does "not appear on the face of the judgment" but, rather, appears in the accompanying opinion. In re DES Litig., 7 F.3d 20, 25 (2d Cir. 1993); accord United States v. Fletcher ex rel. Fletcher, 805 F.3d 596, 605 (5th Cir. 2015). In short, there is nothing for us to excise.

Searching for traction, Lively complains that the challenged statements damaged his reputation. Whether or not this

is true, the overriding principle is that "critical comments made in the course of a trial court's wonted functions — say, factfinding or opinion writing — . . . provide no independent basis for an appeal." In re Williams, 156 F.3d at 92. Lively's embarrassment in the face of the district court's unflattering comments, without more, cannot suffice to manufacture appellate jurisdiction where none exists. See id.; see also In re Shkolnikov, 470 F.3d at 25.

Leaving no stone unturned, Lively attacks the unflattering comments from yet another direction. He contends that the district court, acting ultra vires, entered findings on the merits of the ATS claim and that we have jurisdiction to vacate those findings. In support, he notes that some courts have entertained appeals by prevailing parties for the purpose of vacating unfavorable merits-related findings entered by lower courts after their subject-matter jurisdiction has dissipated. See, e.g., Envtl. Prot. Info Ctr., Inc. v. Pac. Lumber Co., 257 F.3d 1071, 1077 (9th Cir. 2001); New Jersey v. Heldor Indus., Inc., 989 F.2d 702, 708-09 (3d Cir. 1993).[3] Attempting to draw a

_____

[3] Most circuits — including this circuit — appear to have taken a narrower view regarding the reviewability of findings that are unnecessary to the judgment. See, e.g., Cooper Indus., Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 876 F.3d 119, 126 (5th Cir. 2017)("Appellate courts review judgments, not opinions."); Tesco Corp. v. Nat'l Oilwell Varco, L.P., 804 F.3d 1367, 1379 (Fed. Cir. 2015) (same); United States v. Rivera, 613 F.3d 1046, 1051 (11th Cir. 2010) (same); United States v. Accra Pac, Inc., 173

- 8 -

parallel, Lively submits that the court below adjudicated SMUG's claim under international law even after recognizing the absence of federal subject-matter jurisdiction over that claim.

This attempt at parallelism does not withstand scrutiny. We agree that a decision on the merits by a court lacking subject-matter jurisdiction is an utter nullity, without binding effect. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101-02 (1998). Here, however, the district court never purported to adjudicate the substantive merits of SMUG's ATS claim. Rather, it limited itself to "[t]he much narrower and more technical question" of whether the evidence of domestic misconduct was sufficient to confer subject-matter jurisdiction over the claim. Lively II, 254 F. Supp. 3d at 264. Lively's argument that the district court decided the merits of the ATS claim is simply wrong.[4]

At times, Lively suggests that a different provision, 28 U.S.C. § 2106, operates independently to supply a basis for appellate jurisdiction. This argument misses the mark. Section

_____

F.3d 630, 632 (7th Cir. 1999) (same); In re Williams, 156 F.3d at 90 (same). For present purposes, it suffices for us to assume (without deciding) that the slightly broader view articulated in the cases upon which Lively relies may be good law.

[4] The district court did suggest in passing that Lively might have violated international law, but it did so without any meaningful analysis. See Lively II, 254 F. Supp. 3d at 264. This suggestion is plainly dictum. As a result, it should not be accorded any binding effect in future litigation between the parties. See Barnes, 251 F.3d at 258; Dedham Water Co. v. Cumberland Farms Dairy, Inc., 972 F.2d 453, 459 (1st Cir. 1992).

2106 empowers courts of appeals to "affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review" and to "remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." The statute thus enumerates the extensive remedial authority available to a court of appeals, see Will v. Calvert Fire Ins. Co., 437 U.S. 655, 661 (1978) (plurality opinion), not the sort of orders that may be appealed.

That ends this aspect of the matter. We lack jurisdiction to entertain Lively's importunings that we purge certain unflattering comments from the district court's opinion. Consequently, this portion of Lively's appeal must be dismissed for want of appellate jurisdiction.

## B. **Alternative Basis for District Court Jurisdiction.**

The district court's dismissal of SMUG's ATS claim, see Lively II, 254 F. Supp. 3d at 271, destroyed the primary hook on which the district court's federal jurisdiction was hung. With federal jurisdiction extinguished, the district court moved directly to a consideration of whether it should exercise supplemental jurisdiction over what it viewed as SMUG's pendent state-law claims. See id. at 270-71. On appeal, Lively asserts that the district court missed a step: SMUG's complaint contained an allegation of diversity jurisdiction, see 28 U.S.C. 1332(a),

- 10 -

and — in Lively's view — that allegation assured the district court's jurisdiction over SMUG's state-law claims even after SMUG's foundational federal claim was jettisoned.

We accept the underlying premise on which Lively's assertion rests: when a district court has diversity jurisdiction, it normally has the obligation to exercise that jurisdiction. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 356 (1988). We disagree, however, with Lively's conclusion. Although SMUG's complaint alleged jurisdiction under the ATS and the diversity statute, Lively consistently argued in the district court that diversity jurisdiction was a myth. For example, Lively denied the existence of diversity jurisdiction in his answer to the complaint. Likewise, in his summary judgment brief, Lively maintained that "SMUG cannot establish diversity jurisdiction."

Given the "no diversity" litigating position that Lively adopted in the district court, SMUG argues that he should be foreclosed, as a matter of equity, from taking a directly contradictory position on appeal. This argument hits home: it brings into bold relief the doctrine of judicial estoppel, under which a litigant may be precluded "from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Pegram v. Herdrich, 530 U.S. 211, 227 n.8 (2000). Such an equitable doctrine safeguards "the integrity of the courts by preventing parties from improperly

manipulating the machinery of the judicial system." Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004).

Judicial estoppel is not to be applied by a court as a matter of course but, rather, is to be applied at the court's discretion. See New Hampshire v. Maine, 532 U.S. 742, 750 (2001). This discretion is not boundless. See id. Judicial estoppel must be "applied with caution to avoid impinging on the truth-seeking function of the court." Perry v. Blum, 629 F.3d 1, 11 (1st Cir. 2010) (quoting Teledyne Indus., Inc. v. NLRB, 911 F.2d 1214, 1218 (6th Cir. 1990)).

Here, however, judicial estoppel is a good fit. Taken element by element, the doctrine appears closely tailored to the circumstances of the case, and the relevant equities weigh heavily in favor of a straightforward application of judicial estoppel.

It is settled that a party may be judicially estopped when its current position is plainly inconsistent with its earlier position, see New Hampshire, 532 U.S. at 750, such that the two positions are "mutually exclusive," Alt. Sys. Concepts, 374 F.3d at 33. In addition, the party must have persuaded the first tribunal to accept its earlier position, such that judicial adoption "of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" New Hampshire, 532 U.S. at 750 (quoting Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 599 (6th Cir. 1990)); see Alt.

Sys. Concepts, 374 F.3d at 33.  Finally, the court should consider whether the party "seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."[5] New Hampshire, 532 U.S. at 751. What counts most "is not whether a party . . . relied on the [prior] position, but rather whether the court did so in reaching its decision."  Rederford v. U.S. Airways, Inc., 589 F.3d 30, 38 (1st Cir. 2009).

The first element of the judicial estoppel framework is not open to serious question:  Lively all but concedes that his position on appeal flatly contradicts the position that he took below.  The second element is also satisfied.  An issue need not always be decided explicitly but, rather, may sometimes be decided implicitly, as when the resolution of that issue comprises, either logically or practically, an essential part of the ordering court's decision.  See Stoehr v. Mohamed, 244 F.3d 206, 208 (1st Cir. 2001) (per curiam).  So it is here.  The district court unarguably bought what Lively was selling:  although it did not expressly address the existence vel non of diversity jurisdiction in its dispositive ruling, its dismissal of the action necessarily adopted Lively's argument that diversity jurisdiction was lacking.  No more is

_____

[5] We note that the presence of this third element, though relevant, is "not a sine qua non" for the application of judicial estoppel.  Alt. Sys. Concepts, 374 F.3d at 33.

exigible to satisfy the second element. See United States v. Pakala, 568 F.3d 47, 60 (1st Cir. 2009).

So, too, the third element was satisfied. Lively obtained a significant benefit from his disavowal of diversity jurisdiction: an order terminating the five-year-long federal case against him and forcing SMUG to litigate outside its preferred forum.

To complete the picture, we do not believe either that SMUG would obtain an undue benefit or that Lively would be unfairly disadvantaged were we to apply judicial estoppel. After all, both sides remain free to litigate the state-law claims on the merits in an appropriate forum. Cf. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (observing that state courts provide "a surer-footed reading" of state law); Kando v. R.I. State Bd. of Elections, 880 F.3d 53, 61 n.4 (1st Cir. 2018) (recognizing that state courts are best equipped "to expand the frontiers of state law"). Although Lively raises a gallimaufry of defenses to the state-law claims under the First Amendment, our decision in no way forecloses him from raising these merits-based defenses in state court. See Burt v. Titlow, 571 U.S. 12, 19 (2013).

In this case, there is every reason to invoke judicial estoppel — and no sound reason to discard it. We conclude, therefore, that the doctrine of judicial estoppel operates to hold Lively to his prior representations regarding the absence of

- 14 -

diversity jurisdiction. Thus, judicial estoppel bars Lively's belated effort to show that the district court, even after dismissing the ATS claim, had an alternative basis for federal subject-matter jurisdiction.

Seeking to shift the trajectory of the debate, Lively argues that principles of estoppel are inappropriate in the context of subject-matter jurisdiction. In support, he relies on the proposition that subject-matter jurisdiction cannot be waived or created by acquiescence. See Gonzalez v. Thaler, 565 U.S. 134, 141 (2012); see also Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 16 (1st Cir. 2018). This proposition is unassailable: it arises out of a frank recognition that the boundaries of federal subject-matter jurisdiction are circumscribed by Article III and congressional action, with the result that a federal court may not employ equitable doctrines in a manner that would gratuitously enlarge federal judicial authority. See Erie Ins. Exch. v. Erie Indem. Co., 722 F.3d 154, 162-63 (3d Cir. 2013).

Lively overlooks, though, that this is a one-way ratchet. Even though federal subject-matter jurisdiction cannot be established through waiver or estoppel, it may be defeated by waiver or estoppel. For example, a federal court is not required to assume jurisdiction under a theory that a party has waived. See Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 809 n.6 (1986); Am. Vantage Cos. v. Table Mountain Rancheria, 292 F.3d

- 15 -

1091, 1101 & n.11 (9th Cir. 2002); Kale v. Combined Ins. Co. of Am., 924 F.2d 1161, 1165, 1169 (1st Cir. 1991). So, too, although the doctrine of judicial estoppel cannot be applied to create federal subject-matter jurisdiction that is otherwise lacking, it may be applied to prevent a party from basing federal subject-matter jurisdiction on facts that directly contradict his previous representations to another tribunal. See Lydon v. Bos. Sand & Gravel Co., 175 F.3d 6, 12-13 (1st Cir. 1999).

Lydon guides our inquiry. There, we deemed it appropriate to apply judicial estoppel in order to prevent a party from gaining an advantage through "patently unfair" conduct that was "destructive to the integrity of the judicial system." Id. at 13. The same sort of situation obtains here: Lively and his counsel owed a duty of candor to the district court, see Nix v. Whiteside, 475 U.S. 157, 174 (1986); see also Fed. R. Civ. P. 11; they told that court that diversity jurisdiction did not exist; and they secured a dismissal of the pending federal suit, partially as a result of that disclaimer. When a party makes a representation to a court, there is no unfairness in insisting that he live with its consequences. Accordingly, there is no principled way in which we can now permit Lively to embrace a directly contradictory position "simply because his interests have changed." New Hampshire, 532 U.S. at 749 (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895)). Any other outcome would

"rais[e] the specter of inconsistent determinations and endanger[] the integrity of the judicial process."  Alt. Sys. Concepts, 374 F.3d at 33.

### C. Refusal to Exercise Supplemental Jurisdiction.

As a fallback, Lively complains that the district court abused its discretion in declining to exercise supplemental jurisdiction over SMUG's state-law claims.  In Lively's view, the court should have exercised such jurisdiction, resolved SMUG's pendent claims in his favor, and dismissed them with prejudice.

We have jurisdiction to review this plaint.  When the district court declined to exercise supplemental jurisdiction, it dismissed SMUG's state-law claims without prejudice.  See Lively II, 254 F. Supp. 3d at 270-271.  We may hear a prevailing defendant's appeal on a dismissal without prejudice when the defendant argues that the case should have been dismissed with prejudice.  See El Paso Nat. Gas Co. v. United States, 750 F.3d 863, 885 (D.C. Cir. 2014); Briscoe v. Fine, 444 F.3d 478, 495-96 (6th Cir. 2006); H.R. Techs., Inc. v. Astechnologies, Inc., 275 F.3d 1378, 1382 (Fed. Cir. 2002); Amazon, Inc. v. Dirt Camp, Inc., 273 F.3d 1271, 1275-76 (10th Cir. 2001); Labuhn v. Bulkmatic Transp. Co., 865 F.2d 119, 122 (7th Cir. 1988); see also 15A Charles Alan Wright et al., Federal Practice and Procedure § 3914.6 (3d ed. 2018).  Such a defendant suffers a cognizable injury since the decree, rather than terminating the litigation, subjects him

to the risks of additional proceedings in state court.[6]  See Jarvis v. Nobel/Sysco Food Servs. Co., 985 F.2d 1419, 1424-26 (10th Cir. 1993); Disher v. Info Res., Inc., 873 F.2d 136, 138-39 (7th Cir. 1989).

Although Lively wins the jurisdictional battle over this issue, he loses the war.  On the merits, we find his argument unpersuasive.  The baseline rule is that the dismissal of a foundational federal claim does not deprive a federal court of authority to exercise supplemental jurisdiction over pendent state-law claims.  See Lawless, 894 F.3d at 19.  Instead, such a dismissal "sets the stage for an exercise" of the district court's broad discretion.  Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996).  In such a situation, the factors to be considered by a district court in determining whether to exercise supplemental jurisdiction include "judicial economy, convenience, fairness, and comity."  Cohill, 484 U.S. at 350 n.7. Additionally, the court may consider other relevant factors, including the presence of novel or sensitive issues of state law.

---

[6] Although there is a suggestion in one of our earlier cases that a party may lack standing to appeal a without-prejudice dismissal, see Kale, 924 F.2d at 1169 (dictum), this suggestion was not made in a situation in which the complaining party was arguing for a with-prejudice dismissal.  In any event, the suggestion is dictum and, as such, lacks any binding effect.  See Dedham Water, 972 F.2d at 459.

See Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995); see also 28 U.S.C. § 1367(c)(1).

Upon the pretrial dismissal of SMUG's foundational federal claim, the district court assessed the appropriate mix of factors. It concluded that the balance of those factors favored dismissal of the state-law claims. See Lively II, 254 F. Supp. 3d at 270-71. In reaching this conclusion, the court emphasized that the state-law claims raised sensitive and undeveloped questions of state law. See id. Weighing everything in the balance, the court declined to exercise supplemental jurisdiction over the state-law claims and dismissed them without prejudice. See id. On whole-record review, we discern no abuse of discretion in the district court's declination of supplemental jurisdiction.

Lively's asseveration that the district court should have dismissed the state-law claims with prejudice rings hollow. It is clear beyond hope of contradiction that a district court, upon appropriately declining to exercise supplemental jurisdiction, must dismiss the unadjudicated state-law claims without prejudice, not with prejudice. See United States ex. rel. Kelly v. Novartis Pharms. Corp., 827 F.3d 5, 16 (1st Cir. 2016). The court below properly applied this prescription.

## D. **A Loose End.**

There is one loose end. Lively asks us to reverse the district court's 2013 order denying his first motion to dismiss. However, we lack jurisdiction to entertain this claim of error.

As we have said, our appellate jurisdiction is ordinarily limited to the review of final orders and judgments. See In re Shkolnikov, 470 F.3d at 24. Under section 1291, "prior interlocutory orders merge with the final judgment in a case, and the interlocutory orders (to the extent that they affect the final judgment) may be reviewed on appeal from the final order." In re Westinghouse Sec. Litig., 90 F.3d 696, 706 (3d Cir. 1996) (Alito, J.). By contrast, interlocutory orders that have no impact on the final judgment are generally unreviewable. See Hoefer v. Bd. of Educ., 820 F.3d 58, 62 (2d Cir. 2016); Klamath Strategic Inv. Fund ex rel. St. Croix Ventures v. United States, 568 F.3d 537, 546 (5th Cir. 2009). This case falls within the general rule of non-reviewability, not within any exception to it.

Lively's first motion to dismiss was made under Federal Rule of Civil Procedure 12(b). When an order denying a Rule 12(b) motion has no effect on the ultimate disposition of the case, that order is unreviewable. See Foy v. Schantz, Schantzman & Aaronson, P.A., 108 F.3d 1347, 1350 (11th Cir. 1997).

This is such a case. Subsequent to the denial of Lively's first motion to dismiss, see Lively I, 960 F. Supp. 2d at

335, Lively's arguments about extraterritoriality ultimately prevailed: the district court granted his summary judgment motion and dismissed SMUG's ATS claim, see Lively II, 254 F. Supp. 3d at 271. The district court's denial of Lively's first motion to dismiss, therefore, "never ripened into a judgment and had no effect on the outcome of the case." Hoefer, 820 F.3d at 62-63. As such, we lack jurisdiction to review it. See Foy, 108 F.3d at 1350; cf. Ortiz v. Jordan, 562 U.S. 180, 183-84 (2011) (holding denial of summary judgment unreviewable following full trial on merits and verdict).

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we dismiss the appeal in part for want of appellate jurisdiction and otherwise affirm the judgment below. Costs shall be taxed in favor of SMUG.


**So Ordered.**